UNITED STATES DISTRICT COURT     FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

DARRYL GRAY,

        Petitioner,                 MEMORANDUM
                                                                AND ORDER
                                                               08-CV-3300 (JG) (LB)

    -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

        Respondent.
---------------------------------------------------------------x

A P P E A R A N C E S :

    DARRYL GRAY
        04-A-1911
        Green Haven Correctional Facility
        P.O. Box 4000
        Stormville, NY 12582
        Petitioner, *Pro Se*

    ANDREW M. CUOMO
        New York State Attorney General
        120 Broadway, 22nd Floor
        New York, NY 10271
    By:    Alyson J. Gill
        Paul M. Tarr
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        Darryl Gray, currently incarcerated in Green Haven Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his conviction in New York State Supreme Court of nine counts of robbery in the first degree and one count of criminal possession of stolen property in the fifth degree. Gray alleges that the trial judge erroneously failed to suppress certain identification evidence and that his trial counsel was

1

constitutionally ineffective for failing to investigate an alibi defense. For the reasons stated below, Gray's petition is denied.

## BACKGROUND

A.   *The Crimes and the Investigation*

The government's evidence at trial established that during December 2000 and January 2001, a suspect described by witnesses as a black male standing approximately 6'4" tall and weighing roughly 250 pounds committed a series of robberies in Queens. Witnesses also stated that the man wore a green coat and black pants and carried a knife.

On January 4, 2001, at approximately 7:45 P.M., Detective James Conlon received a police radio call stating that a woman had been robbed by a 300-pound black man in a brown jacket, brown pants, and a brown cap. Because the call indicated that the suspect may have fled in the direction of the number 7 subway train, Conlon proceeded to the Roosevelt Avenue subway station and held the train there. During his search of the train cars, Conlon saw petitioner Darryl Gray, a black male who was approximately 6'4" tall and 220 pounds and was wearing a green jacket. Conlon did not see anyone else matching the description of the robber, and he asked Gray to get off the train. While doing so, Gray reached into his jacket, at which point Conlon grabbed Gray's hand and reached into Gray's jacket pocket, where he found a knife.[1] Conlon then handcuffed Gray.

Gray was taken to the station house, where Detective Paul Heider read him his *Miranda* warnings. Gray stated that he understood the warnings and signed a statement to that

---

[1] The police also recovered an engraved ring and a "two-dollar bill with distinctive writing" that were taken from the victim of the January 4 robbery, Respondent's Mem. 2, but it is unclear whether these items were recovered from Gray during Detective Conlon's initial stop-and-frisk or during a station house inventory search.

2

effect. Heider told Gray that if he discussed the robberies, Heider would present the information involving all nine robberies to the district attorney in a single package. Gray waived his rights and told Heider of his involvement in the robberies. Gray also rode with Heider to four locations where robberies had been reported and admitted that he had robbed women in those locations at knifepoint. He also told Heider that he began to commit the robberies in mid-December, after losing his job. The police then conducted a series of line-ups, in which all six victims in attendance identified Gray as the man who had robbed them.

On February 3, 2003, Queens County Supreme Court Justice Robin Dunlop began a suppression hearing to determine whether any of the statements, identifications, or physical evidence implicating Gray had been obtained illegally. Justice Dunlop ruled that the physical evidence had been seized pursuant to a lawful arrest, that Gray's statements were made after a knowing and voluntary waiver of his *Miranda* rights, and that the identification procedures were not impermissibly suggestive or otherwise unlawful. Gray's motion to suppress was therefore denied in its entirety.

At a trial beginning on June 2, 2003, victims of nine robberies testified that they were robbed by Gray. The government also introduced a video surveillance tape of the January 4, 2001 robbery, the ring and the two-dollar bill allegedly taken during that robbery and found on Gray at the time of his arrest, evidence of the line-up identifications, and the statements Gray made to Detective Heider. Gray presented no evidence at trial. On June 23, 2003, a jury found Gray guilty of nine counts of first-degree robbery and one count of fifth-degree criminal possession of stolen property. Gray was ultimately sentenced, in the aggregate, to a fifty-year term of imprisonment.

B.  *Appeal and Collateral Proceedings*

On appeal, Gray filed a counseled brief arguing that his suppression motion was improperly denied. He argued that Officer Conlon did not have reasonable suspicion to order Gray off the train because he did not match the description transmitted in the January 4 radio call and because the description of the serial robber was overly vague. Gray also filed a *pro se* brief arguing that his trial counsel was constitutionally ineffective because she failed to investigate the possibility that his subway Metrocard or his employer, Lodell's Restaurant in Manhattan, would provide alibi evidence.

The Appellate Division affirmed Gray's conviction, finding that Detective Conlon had reasonable suspicion to detain and search Gray "based upon, *inter alia*, the contents of a police dispatcher's radio broadcast providing a general description of the perpetrator which matched the description of the defendant, information that the detective had regarding a series of robberies with a similar pattern, and the short passage of time between the commission of the crime and the observation of the defendant." *People v. Gray*, 825 N.Y.S.2d 746, 746 (2d Dep't 2006). It declined to review Gray's ineffective assistance claim because it was "based on alleged facts dehors the record." *Id.* The Court of Appeals denied Gray leave to appeal on May 9, 2007. *People v. Gray*, 8 N.Y.3d 984 (2007). On August 4, 2008, Gray filed the instant petition for a writ of habeas corpus in this Court.

DISCUSSION

A.  *Review of State Court Adjudications under AEDPA*

A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established

4

Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (internal quotation marks omitted).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it explicitly refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B. *Exhaustion of State Court Remedies*

Generally, a state prisoner seeking federal habeas review must first exhaust available state court remedies. 28 U.S.C. § 2254(b)(1). This exhaustion requirement is not satisfied unless the federal claim has been "fairly presented" to the state courts. *Daye v. Att'y*

*Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (internal citation omitted). When a habeas petition contains both exhausted and unexhausted claims (a so-called "mixed petition"), the petition ordinarily must be dismissed unless the petitioner (1) meets the criteria for a "stay and abeyance" while the petitioner exhausts his claims in state court, or (2) agrees to delete the unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 522 (1982); *Rhines v. Weber,* 544 U.S. 269, 277 (2005). A "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," but should never be granted "when [the] unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277. When a "stay and abeyance is inappropriate," the district court will "allow the petitioner to delete the unexhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* Finally, the district court has discretion to deny a petition that contains both exhausted and unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2).

C.   *The Merits of Gray's Claims*

   1.   *Identification Evidence*

Gray first contends that he is entitled to habeas relief because his "motion to suppress identification evidence" was "improperly denied." Pet. 3. To the extent that Gray argues that the identification evidence was improperly introduced as the fruit of a Fourth Amendment violation, his claim is foreclosed by the doctrine of *Stone v. Powell*, 428 U.S. 465, 482 (1976), which prevents a federal habeas court from granting relief "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." Gray had the opportunity to air his claim both at the suppression hearing and on direct appeal, and he gives me

6

no reason to doubt that those procedures were fair. Accordingly, he is not entitled to relief on the grounds that the identification evidence was obtained pursuant to an allegedly illegal arrest. *See Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir. 1980).

To the extent that Gray now seeks to argue that the identification procedures were so unreliable that they violated his due process rights, *see Neil v. Biggers*, 409 U.S. 188 (1972), his argument is unexhausted because he failed to raise it on direct appeal. The argument is also meritless, as there is no indication that the state court's finding, that the other members of the line-up were similar in appearance to Gray, *see* Short Form Order at 9, *People v. Gray*, Indictment No. 69/01 (Sup. Ct. Queens Cty. March 20, 2003), was erroneous.

2. *Ineffective Assistance*

Gray also contends that his trial counsel was ineffective for failing to investigate whether his subway Metrocard or former employer might have yielded alibi evidence for one or more of the robberies. The Supreme Court has established the following standard for claims that defense counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, Gray must show both (1) that counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[S]trategic choices made after less than

7

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Because the Appellate Division found that it could not review Gray's ineffective assistance claim on the record provided, *People v. Gray*, 825 N.Y.S.2d at 746, and because Gray failed to seek state court collateral review of his conviction on this basis, his claim is unexhausted. Given Gray's failure to demonstrate good cause for his failure to exhaust this claim, I cannot stay his petition while he pursues any available state court remedies. *Rhines,* 544 U.S. at 277.

In any event, his claim is meritless. It is unclear how defense counsel would have been able to link Gray to any allegedly exculpatory Metrocard without placing Gray on the stand and subjecting him to potentially devastating cross-examination. Moreover, trial counsel obviously had a strategy with respect to the Metrocard: He cross-examined the detective about the *government's* failure to investigate this issue. Such a challenge to the thoroughness of the investigation is a common method of undermining a prosecution. In hindsight, Gray now contends that it would have been more fruitful for defense counsel to conduct that investigation himself. Perhaps that is right, but then again counsel might have harbored a legitimate concern that subpoenaed information about the whereabouts of the Metrocard (assuming it still existed and could be proven to be Gray's) might *corroborate*, rather than undermine, the prosecutor's case. In any event, second-guessing trial counsel's legitimate strategic choices is precisely what *Strickland* prohibits.

Similarly, it was not unreasonable for Gray's attorney to refrain from investigating an employment-related alibi when his client had told the police that he began

committing robberies because he had lost his job. Finally, given the overwhelming evidence of Gray's guilt, I cannot conclude that Gray was prejudiced by any alleged shortcomings in the investigation conducted by his trial counsel. *See Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005) ("[W]here there is overwhelming evidence of guilt, even serious errors by counsel will not warrant granting a writ of habeas corpus.").

## CONCLUSION

For the reasons stated above, Gray's petition is denied. As he has not made a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
      November 25, 2008